**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEVIN EARLE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BARRY SMITH, et al. | : | NO. 21-4830 |

**REPORT AND RECOMMENDATION**

SCOTT W. REID                                                    DATE:  January 17, 2023
UNITED STATES MAGISTRATE JUDGE

        This is a *pro se* petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254 by

Kevin Earle, who is currently incarcerated at SCI Houtzdale, in Houtzdale, PA.  For the reasons

that follow, I recommend that the petition be dismissed in part and denied in part.

I.        *Factual and Procedural Background*

        On November 17, 2011, a jury sitting in the Court of Common Pleas for Philadelphia

County convicted Earle of robbery, possession of an instrument of crime, possession of a firearm

by someone prohibited, and violation of the Uniform Firearms Act.  *Petition* at ¶¶ 2(a) and 5.  On

the same day, Earle was sentenced to an aggregate term of 17 ½ to 35 years' incarceration.  *Id*. at

¶¶2(b) and 3.

        The facts surrounding Earle's conviction are as follows:

        On the morning of January 15, 2010, Agnes Croom and her 16 year-old granddaughter,
        Kiana Smallwood, were getting into their parked car when an unknown man approached
        them.  The man spoke with Croom and told her that there was gas leaking from the rear
        of the car.  As Croom looked under the car, the man pulled out a gun and pointed it at
        Croom's face.  He stole Croom's purse and fled.

        Smallwood called the police and eventually she and Croom went to the police station.  At
        the station, Detective Timothy Veal interviewed Smallwood and Detective Adam
        McGuigan interviewed Croom.  Both Croom and Smallwood were shown photographs of
        possible suspects based on their description of the assailant, but neither were able to
        make a positive identification of the man who had robbed Croom.

One week after the robbery, Croom's son suggested to Croom that Earle, whom Croom did not know, may have been the robber.  Croom relayed this information to Detective McGuigan.  The detective compiled a photo array, which included a photograph of Earle. Detective McGuigan showed the photo array to Croom, while Detective Veal showed the array to Smallwood.  Both Croom and Smallwood positively identified Earle as the robber from the photo array.

...

Croom once again positively identified Earle as the robber at Earle's preliminary hearing and then again at Earle's jury trial, stating that she was "100 percent" [sure] that it had been Appellant who had robbed her.  Smallwood likewise identified Earle as the robber at Earle's trial.  Detective McGuigan also testified at Earle's trial, explaining to the jury that he had generated the photo array from which Croom and Smallwood identified Earle using photos with men who all had similar characteristics.

*Commonwealth v. Earle*, 240 A.3d 159 (Table), 2020 WL 4697074 at *1 (Pa. Super. Aug. 13, 2020) (internal citations omitted, and "Appellant" replaced with "Earle" for clarity).

Earle filed a direct appeal to the Pennsylvania Superior Court.  In it, he argued that the evidence was insufficient to convict him, noting that it was dark at the time of the robbery; the robbery only took a few minutes; and Croom and Smallwood were unable to identify anyone when they met with police immediately after the crime.  *Commonwealth v. Earle*, No. 3146 EDA 2011, 2013 WL 11254748 at *1 (Pa. Super. Sep. 27, 2013).  The Superior Court, however, denied relief based on its conclusion that the identifications made by Croom and Smallwood were sufficient to support the jury's verdict.  *Id*. at *2.  The Pennsylvania Supreme Court denied Earle's Petition for Review on April 2, 2014.  *Commonwealth v. Earle*, 89 A.3d 660 (Table) (Pa. Apr. 2, 2014).

On August 22, 2014, Earle filed a petition for collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 *et seq*.  In his PCRA petition, Earle argued that:

(1) the photo array Croom and Smallwood were shown was tainted;

(2) trial counsel was ineffective for failing to seek to suppress Croom's and Smallwood's identification of him at trial or to object to the identifications at trial;

(3) Earle was prejudiced by the admission of testimony from a detective that Earle was said to have intimidated a witness in a separate case, and by the prosecutor's reference to that testimony in his closing argument;

(4) trial counsel was ineffective for failing to object to the testimony about witness intimidation, to ask that it be stricken or to seek a curative instruction;

(5) a mandatory sentence was illegally imposed upon Earle "without the appropriate factors having been determined as an element of the underlying offense by the jury beyond a reasonable doubt."

*Earle's Amended PCRA Petition*, attached to Commonwealth's Response as unnumbered exhibit.

The PCRA court dismissed Earle's petition on July 14, 2017.  2020 WL 4697074 at *1. Earle then appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court. There, he raised only the issue about counsel's failure to object to, or move to suppress, the photo identification.  *Id*. at *2.  The Pennsylvania Superior Court affirmed the lower court's dismissal of Earle's petition on August 13, 2020.  *Id*.

Earle originally filed a petition for habeas corpus relief in this Court on December 12, 2018, while his PCRA appeal was still pending.  *Earle v. Smith*, 18cv5385, *Report and Recommendation* (E.D. Pa. Nov. 20, 2019), approved and adopted *Earle v. Smith*, 18cv5385 (E.D. Pa. Oct. 30, 2020).  This petition was dismissed without prejudice to refiling once state court proceedings were completed.  *Id*.

The present habeas corpus petition was filed on June 24, 2021.  In it, Earle argues that:

(1) all prior counsel were ineffective in failing to raise claims under *Apprendi v. New Jersey*, 530 U.S. 466 (2000);

(2) all prior counsel were ineffective in failing to object or to preserve objections to Croom and Smallwood's identification of him based on "hearsay";

(3) his mandatory minimum sentence was illegal under *Apprendi*, and subsequent cases explaining *Apprendi*;

(4) the evidence was insufficient to support his conviction; and

(5) the jury instructions were defective in that they failed to define "material facts," and told the jurors they could "infer" his identity.

*Petition* at ¶11.  Earle combined what is set forth above as Claims Four and Five into a single "Ground Four," but since they are unrelated arguments, they are herein treated as two claims.

II.     *Relevant Legal Standards*

        A.     *Standard for Issuance of a Writ of Habeas Corpus*

        In enacting the Antiterrorism and Effective Death Penalty Act of 1196 ("AEDPA"), Congress significantly limited the federal courts' power to grant a writ of habeas corpus.  Where the claims presented in a federal habeas petition were adjudicated on the merits in the state courts, a federal court may not grant habeas relief unless the adjudication either (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. §2254(d).

        As the United States Supreme Court has explained, a writ may issue under the "contrary to" clause of Section 2254(d)(1) only if the "state court applies a rule different from the governing rule set forth in [United States Supreme Court] cases or if [the state court] decides a case differently than [the United States Supreme Court] has done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A writ may issue under the "unreasonable application" clause only where there has been a correct identification of a legal principle from the Supreme Court but the state court "unreasonably applies it to the facts of the

particular case." *Id*.  This requires a petition to demonstrate that the state court's analysis was

"objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  State court factual

determinations are given considerable deference under AEDPA.  *Lambert v. Blackwell*, 387 F.3d

210, 233 (3d Cir. 2004).

AEDPA imposes a one-year statute of limitations for the filing of a petition for writ of

habeas corpus, which – with several exceptions which do not apply here – begins to run from the

date on which the petitioner's judgment became final at the conclusion of direct review, or

expiration of the time for seeking such review.  28 U.S.C. §2244(d)(1)(A).  A "properly filed"

petition for collateral review, such as a PCRA petition, stays the running of the period, while it is

pending.  28 U.S.C. §2244(d)(2).

B.    *State Rulings on State Law*

In reviewing a habeas petition, "a federal court is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*,

502 U.S. 62, 68 (1991).  This standard is codified in AEDPA:

> [A] district court shall entertain an application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court only on the ground that he is
> in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).  Accordingly, the United States Supreme Court has decided that "federal

habeas corpus relief does not lie for errors of state law," because "it is not the province of a

federal habeas court to reexamine state-court determination on state-law questions."  *Estelle*,

*supra*, at 67-8.

C.    *Exhaustion and Procedural Default*

Before a federal court can consider the merits of a habeas claim, a petitioner must comply

with the exhaustion requirement of 28 U.S.C. § 2254(b), giving "the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requires the claim to have been presented at least to the Pennsylvania Superior Court. *Lambert v. Blackwell*, *supra*, at 387 F.3d 233-4.

A petitioner's failure to exhaust state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert v. Blackwell*, 134 F.3d 506, 518-19 (3d Cir. 1997). Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The procedural default doctrine prohibits a federal court from reviewing a habeas claim which was dismissed by the state court based on an independent and adequate state procedural rule. *Coleman*, *supra*, at 749; *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007). The doctrine is grounded in concerns of comity and federalism. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Edwards*, *supra*, *quoting Coleman*, *supra*, at 501 U.S. 732.

A procedural rule provides an independent and adequate basis for precluding federal review if: (1) the rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claim on the merits; and (3) their refusal is consistent with other decisions. *Nara*, at 488 F.3d 199. It is "independent" if it is independent of the federal question presented by the petitioner. *Id.* It is "adequate" for procedural default purposes if it was "firmly

established, readily ascertainable, and regularly followed at the time of the default." *Szuchon v. Lehman*, 273 F.3d 299, 327 (3d Cir. 2001).  These requirements ensure that federal review is not barred unless a habeas petitioner had fair notice of the need to follow what could fairly be called rules of general applicability. *Bronshtein v. Horn*, 404 F.3d 700, 707 (3d Cir. 2005).

Procedural default can be overcome only where a habeas petitioner shows: (a) cause for his failure to comply with state procedural rules, and prejudice resulting therefrom; or (b) that a fundamental miscarriage of justice will occur if the claim is not considered.  *Edwards*, *supra*.  A showing of cause demands that the petitioner establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, *supra*, at 501 U.S. 753.  Examples of suitable cause include a showing that the factual or legal basis for a claim was not reasonably available to counsel, or a showing that "some interference by officials" made compliance with the state rule impracticable.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Once cause is proven, a petitioner must also show that prejudice resulted from trial errors that worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

A fundamental miscarriage of justice ordinarily requires a showing of strong evidence of actual innocence.  *Schlup v. Delo*, 513 U.S. 298, 316 (1995).  This requires the petitioner to present new, reliable evidence of innocence that was not presented at trial. *Id.* at 324.

D.      *Ineffective Assistance of Counsel*

To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show that: (a) counsel's performance was deficient and (b) counsel's actions prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1983).

Counsel's conduct is presumed to fall "within the wide range of professional assistance" and it is the petitioner's burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, at 466 U.S. 689-90.  The inquiry requires courts to be highly deferential to counsel's reasonable strategic decisions and guard against the temptation to engage in hindsight.  *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).  The mere existence of alternative – even preferable or more effective – strategies does not satisfy the requirements of demonstrating ineffectiveness under *Strickland*.  *Marshall*, *supra*, at 307 F.3d 86.  Further, counsel cannot be found ineffective for failing to raise a meritless claim.  *Laffler v. Cooper*, 566 U.S. 156, 167 (2012); *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).

To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* at 466 U.S. 694.  A reasonable probability is a probability "sufficient to undermine confidence in the outcome."  *Id* at 694.  In other words, the petitioner need not show that there would definitely have been a different outcome, but must show that the "result of the proceeding was fundamentally unfair or unreliable."  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

III.     *Discussion*

A.      *Grounds One, Three and Five are Procedurally Defaulted*

The arguments Earle raises in in his first, third and fifth grounds for relief, as enumerated above, have not been exhausted before the Pennsylvania Courts.  Grounds One and Three were raised before the PCRA court, but not included in Earle's PCRA appeal.  As noted above, to exhaust a claim, it must be presented to at least the Pennsylvania Superior Court.  *Lambert*,

*supra*, at 387 F.3d 233-4.  Ground Five has never been raised before, and it, too, is therefore unexhausted.

These claims are also procedurally defaulted, because Earle cannot return to the Pennsylvania courts to exhaust them now.  A PCRA petition, even a second or successive petition, must be filed within one year of the date a petitioner's judgment becomes final.  42 Pa. C.S.A. §9545(b)(1).  Under Pennsylvania law, Earle's judgment became final on approximately October 27, 2013, at the expiration of the 30-day period for filing a petition for allowance of appeal with the Pennsylvania Supreme Court.  Therefore, any PCRA petition filed after October 27, 2014, would be untimely.  The PCRA's statute of limitation is well established as an independent and adequate state rule for the purposes of procedural default of a habeas claim. *Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014).

Earle has attempted to show the cause and prejudice which can excuse procedural default. He argues that his failure to raise Grounds One and Three was caused by the ineffectiveness of all prior counsel.  As the Commonwealth points out, this amounts to an argument under *Martinez v. Ryan*, 566 U.S. 1 (2012).  There, the United States Supreme Court decided that ineffective assistance of counsel in an initial collateral proceeding, such as a PCRA petition, can constitute the cause required to excuse default where the claim not pursued had merit.

However, as the Commonwealth has also pointed out, *Martinez* cannot excuse the default of Grounds One and Three.  Both of these claims were raised in Earle's PCRA petition, but not in his PCRA appeal.  Therefore, any ineffectiveness in failing to exhaust the claims would be attributed to PCRA appellate counsel.  *Martinez,* however, only applies to ineffective assistance in initial-review collateral proceedings, and not to the appeals of those proceedings.  566 U.S. at **16; *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015).

Earle also appears to argue that Ground Three could not have been exhausted earlier because the United States Supreme Court decisions in *Ramos v. Louisiana*, 140 S. Ct. 1390 (2020), *Jones v. Mississippi*, 141 S. Ct. 1307 (2021) and *U.S. v. Haymond* 139 S. Ct. 2369 (2019) are "new rules" expanding on *Apprendi*.   None of these cases, however, has any relevance to Earle's conviction.   *Ramos* established that a unanimous jury verdict is required to find a defendant guilty of a serious offense; Earle was convicted by a unanimous jury.   *Commonwealth v. Earle*, 51-CR-1677-2010 (C.C.P. Phila.), *Trial Transcript* of August 12, 2011, at 3:16-6:1. *Jones* concerns *Apprendi* as it applies to juvenile offenders.   *Haymond* concerns *Apprendi* as it applies to the revocation of probation on charges of child pornography.   Thus, these decisions do not excuse Earle's procedural default of Claim Three.

Claim Five, pertaining to the jury instructions, was never brought before a Pennsylvania court.   Therefore, a *Martinez* argument is not barred by *Norris v. Brooks*, as with Claims One and Three.   However, for *Martinez* to excuse procedural default, Earle would have to prove that his PCRA counsel was ineffective for failing to argue that trial and direct appeal counsel ineffectively failed to raise such a claim.

Here, there is no meritorious underlying claim of trial counsel ineffectiveness.   Earle argues that the jury instructions should have defined "material facts" for the jury.   This appears to relate to the judge's instruction to the jury that it could disbelieve the testimony of a witness who "deliberately testified falsely about a material fact," and that "what constitutes a material fact is for you to determine."   *Trial Transcript* of August 11, 2011, at 56:13-20.   Earle has offered no authority in support of his claim that this commonplace jury instruction is illegal.

Earle also argues that the court erred in instructing the jury that it should "consider all the evidence relating to the question of who committed the crime, including the testimony of the witnesses from which the identity or nonidentity of the perpetrator of the crime may be inferred." *Id*. at 60:12-17. However, as the Commonwealth has pointed out, Pennsylvania law permits identity to be inferred, even from entirely circumstantial evidence. *Commonwealth v. Hickman*, 309 A.2d 565, 566 (Pa. 1973). In this case, the jury heard two positive identifications of Smith. Without a valid underlying claim of counsel ineffectiveness, there is no valid argument that *Martinez* can excuse the procedural default of Claim Five.

   B.   *Counsel Ineffectiveness Regarding Earle's Identification*

In his Ground Two, Earle argues that all counsel were ineffective for failing to object to – or to preserve a claim related to – Croom's and Smallwood's identification of him on the basis that it was derived from hearsay, where "the non-probable cause 'hearsay identification/statements of the victims, who 'heard' from her son, who 'heard' from some unknown party" that Smith "was the perpetrator." *Petition* at Ground Two.

The Pennsylvania Superior Court rejected this claim in Earle's PCRA appeal, writing:

> Appellant asserts that the photo array was tainted because the inclusion of his photo in the array was based on the unreliable hearsay received by Croom that Appellant may have been involved in the robbery. The PCRA court found, however, that the statement to Croom suggesting that Appellant may have been involved in the robbery was not hearsay as it had been introduced as an "explanation as to why [the Detectives] included Appellant's photo in the array rather than concrete evidence as to Appellant's involvement in the robbery in question." PCRA Court Opinion, 7/30/19, at 7, *citing* Pa.R.E. 801(c) (defining hearsay as a statement, other than the one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted). [A]ppellant does not acknowledge this conclusion or argue how the PCRA court erred in reaching it, and we do not discern any error on the part of the PCRA court. *See Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007) (finding that a statement is not considered hearsay if it offered to explain the course of conduct of the police during an investigation).

2020 WL 4697074 at *3.

The Pennsylvania courts' analysis of the underlying evidentiary issue constitutes a state ruling on state law, and it cannot, therefore, be reexamined by this Court. *Estelle v. McGuire*, *supra*, at 502 U.S. 67-8. Based on the Pennsylvania Superior Court's analysis of this issue, counsel were not ineffective under *Strickland* for failing to raise or preserve such a claim. Counsel cannot be found ineffective for failing to raise a meritless claim. *Laffler*, *supra*, at 566 U.S. 167.

C.      *Sufficiency of the Evidence*

Earle argues that the evidence against him was insufficient to support his conviction. However, instead of making an argument that an identification by the victim and an eye-witness who both saw him at close range was insufficient to sustain a conviction for armed robbery, he argues that the jury should have discounted their testimony because "the offense occurred in the pre-dawn morning hours and victim testified that the perpetrator wore a hoodie and his face was not exposed." *Petition* at Ground Four. This implicates not the sufficiency, but the weight of the evidence, because it in effect asserts that the jury should not have credited Croom's and Smallwood's identifications.

A claim based on the weight of the evidence is not cognizable in a federal habeas court proceeding because a federal court may not reevaluate the credibility of witnesses on habeas corpus review. *Marshall v. Lonberger*, 459 U.S. 422-434-5 (1983); *Tibbs v. Florida*, 457 U.S. 31, 38-9 (1982).

To the extent that Earle intends to raise this as a claim of ineffective assistance of counsel, the claim lacks merit because counsel raised the same claim of insufficiency of the evidence on direct appeal. *Commonwealth v. Earle*, 2013 WL 11254748 at *1. Logically, counsel cannot be found ineffective for failing to raise a claim he or she actually raised.

The Pennsylvania Superior Court rejected the claim:

> At trial, Ms. Croom identified Appellant as the person that robbed her at gunpoint on January 15, 2010.  Ms. Smallwood also identified Appellant in court as the person that robbed her grandmother on that day.  Appellant attempts to undermine the strength of this testimony on appeal; however, the jury clearly believed this testimony, as was its right to do.  We conclude that, when this evidence is viewed in a light most favorable to the Commonwealth, it is sufficient to establish that Appellant was the person responsible for, *inter alia*, robbing Ms. Croom at gunpoint.  Appellant's issue warrants no relief.

*Id*. at *2.  (Internal citations to the trial transcript omitted).

In so deciding, the Pennsylvania Superior Court used a standard consistent with that set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), whereby a court must ask if, in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *See Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020).  The facts upon which the court relied are obviously reasonable, since Croom and Smallwood undoubtedly identified Earle in court.[1]  Thus, even if this claim is considered as a direct claim of insufficiency of the evidence, there would be no basis under AEDPA for interfering with the state court's decision.

---

[1] The Commonwealth also points out that Earle's claim is not factually accurate:  Croom testified that the perpetrator's hood was up, but that she could see his entire face, other than his ears  *Notes of Testimony*, Aug. 9, 2011 at 61:3-17.  Smallwood also testified:  "I could see all of his face.  I just couldn't see his hair or his ears."  *Id*. at 107:6-14.

IV.     *Conclusion*

For the reasons set forth above, I now make the following:


### ***RECOMMENDATION***


AND NOW, this 17th day of January, 2023, it is respectfully recommended that this petition be denied in part and dismissed in part.  There has been **no** substantial showing of the denial of a constitutional right requiring the issuance of a certificate of appealability.  The petitioner may file objections to this Report and Recommendation within fourteen days after being served with a copy.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).


BY THE COURT:

*/s/ Scott W. Reid*

_____

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE